## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re: | : |
| | : |
| BARBARA KILIAN | : |
| xxx-xx-1210 | :CHAPTER 13 |
|             Debtor. | :CASE NO. 18-11402/AMC |
| | : |
| | : |
| | : |
| U.S. Bank National Association as Legal | : |
| Title Trustee for Truman 2016 SC6 Title | : |
| Trust | : |
|             Movant, | : |
| v. | : |
| | : |
| BARBARA KILIAN | : |
| | : |
|             Debtor, | :Hearing Date:  July 17, 2018 @ 11:00 a.m. |
| And | : |
| | : |
| WILLIAM C. MILLER, ESQUIRE | : |
| | :Courtroom #5 |
|             Trustee, | : |
| | : |
|             Respondents. | : |
| | : |
| | : |

**MOTION BY U.S. BANK NATIONAL ASSOCIATION AS LEGAL TITLE TRUSTEE FOR TRUMAN 2016 SC6 TITLE TRUST FOR RELIEF FROM THE AUTOMATIC STAY TO PERMIT MOVANT TO EXERCISE ITS RIGHTS UNDER STATE LAW AGAINST CERTAIN REALTY KNOWN AS 5955 HORROCKS STREET, PHILADELPHIA, PENNSYLVANIA 19149**

Movant, by its Attorney, Romano Garubo & Argentieri, Emmanuel J. Argentieri, Esquire appearing, hereby requests a modification of the automatic stay and leave so it can exercise its rights under state law against certain realty and avers as follows:

1.      Movant is U.S. Bank National Association as Legal Title Trustee for Truman 2016 SC6 (hereinafter "Movant").

2.        On November 23, 2005, Michael Bickings (hereafter "Debtor") executed a note secured by a mortgage against the property known as 5955 Horrocks Street, Philadelphia, Pennsylvania 19149 ("Subject Property") in which Debtor is the title holder. **(Please see subject loan documents, attached hereto as Exhibit A).**

4.        Debtor's Chapter 13 petition was filed March 1, 2018.

5.        Debtor should have made three (3) payments outside of the plan since the date of filing petition.

6.        However, since the date of filing, Debtor has not made ANY payments at all.

7.        Debtor is behind three (3) payments outside the plan, through the payment due June 1, 2018.

8.        The total amount of delinquency outside the plan is $2,549.28

The amount is computed in the following manner:

3 times payment of $849.76 (4/1/18 - 6/1/18)

[$849.76 payment consists of $603.43 p&i, plus $246.33 escrow]

9.        Pursuant to the foregoing, Movant contends that cause exists to grant it relief from the Automatic Stay.  Movant is not adequately protected.  Accordingly, Movant is entitled to relief from the automatic stay under 11 U.S.C. §362(d)(1).

10.       Movant has cause to have relief from the Automatic Stay effective immediately and such relief should not be subject to the fourteen day period set forth in Bankruptcy Rule 4001(a)(3), as Movant will incur substantial additional costs and expenses by the imposition of said fourteen day period.

11.       Movant has had to incur legal fees as a result of the prosecution of this Motion.

12.    The other Respondent is the Chapter 13 Trustee appointed in the above-captioned

chapter 13 proceeding.

WHEREFORE, Movant respectfully requests that the Court enter an Order which grants

it relief from the Automatic Stay, along with all other relief the Court deems just and equitable

under the circumstances.

ROMANO GARUBO & ARGENTIERI
Attorneys for Movant

By: /s/ Emmanuel J. Argentieri
    Emmanuel J. Argentieri, Esquire
    PA Attorney ID No. 59264

Dated:  June 25, 2018

BK Filed date:  3/1/18                    Fay Servicing, LLC
Debtor name: Kilian                    Post-Petition Payment Ledger

| Month Due | Amt Due | Date Received | Amt Rec'd | Pmt Satisfied | To/From Suspense | Susp Balance |
|---|---|---|---|---|---|---|
| 4/1/2018 | $    849.76 | | | | -$849.76 | -$849.76 |
| 5/1/2018 | $    849.76 | | | | -$849.76 | -$1,699.52 |
| 6/1/2018 | $    849.76 | | | | -$849.76 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |
| | | | | | $0.00 | -$2,549.28 |

Loan No.

# FIXED RATE NOTE

### THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

November 23, 2005                     Orange                               CA
[Date]                                        [City]                                [State]

5955 HORROCKS STREET, Philadelphia, PA 19149
[Property Address]

1.  **BORROWER'S PROMISE TO PAY**
    In return for a loan that I have received, I promise to pay U.S. $ 75,062.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is     Ameriquest Mortgage Company .
    I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.  **INTEREST**
    Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  8.990 %.

    The interest rate required by this Section 2 is the rate I will pay before and after any default described in Section 6(B) of this Note.

3.  **PAYMENTS**
    **(A)  Time and Place of Payments**
    I will pay principal and interest by making payments every month.
    I will make my monthly payments on the first day of each month beginning on   January 1, 2006.
    I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal.  If, on    December 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

    I will make my monthly payments at:  505 City Parkway West, Suite 100,  Orange, CA 92868

    or at a different place if required by the Note Holder.

    **(B)  Amount of Monthly Payments**
    My monthly payments will be in the amount of U.S. $603.43.

4.  **BORROWER'S RIGHT TO PREPAY**
    I may repay this Note at any time as provided for in this paragraph. If the original principal amount of this loan is $50,000.00 or less, I may make a full or partial prepayment without paying any penalty. However, if the original principal amount of this loan exceeds $50,000.00, and if within the first  3.00  year(s) after the execution of this Mortgage, I make full prepayment or, in certain cases a partial prepayment, and the total of such prepayments in any one (1) year exceeds twenty percent (20%) of the original principal amount, I will pay a prepayment charge in an amount equal to the payment of six (6) months advance interest on the amount prepaid which is in excess of twenty (20%) of the original principal amount.

5.  **LOAN CHARGES**
    If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (i) any such loan charged shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

6.  **BORROWER'S FAILURE TO PAY AS REQUIRED**
    **(A)  Late Charges for Overdue Payments**
    If the Note Holder has not received the full amount of any monthly payment by the end of  fifteen  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  6.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    **(B)  Default**
    If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    **(C)  Notice of Default**
    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed me.

Initials:

JJK  BL

AM

200-1PA (Rev 07/03)

**(D)    No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)    Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

**7.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.    UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if prohibited by federal law as of the date of this Security Instrument.

If the Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_Joseph J. Kilian_ _____ (Seal)
Borrower    JOSEPH J KILIAN
SSN:

_Barbara Kilian_ _____ (Seal)
Borrower:    BARBARA KILIAN
SSN:

_____ (Seal)
Borrower:
SSN:

_____ (Seal)
Borrower:
SSN:

JJK  ✗            B.K

2 of 2

PAY TO THE ORDER OF
CitiMortgage, Inc
WITHOUT RECOURSE
AMERIQUEST MORTGAGE COMPANY

BY: ____________________
ASEEM MITAL, PRESIDENT/C.E.O.

BY: ____________________
KAREN CHRISTENSEN, C.F.O.

Prepared By:

Ameriquest Mortgage Company

Alicia Vandermark
3220 Tillman Dr., #101,Bensalem, PA
19020

Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
2925 Country Drive
St. Paul, MN 55117

51334460
Page: 1 of 18
12/10/2005 11:27AM

Parcel Number:
621355700
Premises:
5955 HORROCKS STREET, Philadelphia,
PA 19149

This Document Recorded
12/10/2005
11:27AM
Doc Code: M

Doc Id: 51334460
Receipt # 460445
Reg Fee: 126.50
Commissioner of Records, City of Philadelphia

[Space Above This Line For Recording Data]

# MORTGAGE

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.
(A) "Security Instrument" means this document, which is dated November 23, 2005
together with all Riders to this document.
(B) "Borrower" is JOSEPH J KILIAN and BARBARA KILIAN, His Wife

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Ameriquest Mortgage Company

PENNSYLVANIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3039 1/01
11/23/2005 10:52:51

AM6PA (0508)
Page 1 of 16
VMP Mortgage Solutions, Inc. (800)521-7291

Initials JJK
β K

Lender is a Corporation
organized and existing under the laws of Delaware
Lender's address is 1100 Town and Country Road, Suite 200   Orange, CA 92868

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated November 23, 2005
The Note states that Borrower owes Lender seventy-five thousand sixty-two and 00/100
                                                                        Dollars
(U.S. $ 75,062.00         ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than December 1, 2035
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider   ☐ 1-4 Family Rider
☐ VA Rider                 ☐ Biweekly Payment Rider     ☐ Other(s) [specify]

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

AM6PA (0508)                        Page 2 of 16        Initials: JJK        Form 3039  1/01

11/23/2005 10:52:51

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the **County**                     [Type of Recording Jurisdiction]
of **PHILADELPHIA**                                         [Name of Recording Jurisdiction]:

Legal Description Attached Hereto and Made a Part Hereof.

which currently has the address of 5955 HORROCKS STREET

[Street]

Philadelphia                                          [City], Pennsylvania 19149           [Zip Code]
("Property Address"):

Initials: _____

AM6PA (0508)                              Page 3 of 16                              Form 3039  1/01
11/23/2005 10:52:51

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in

AM6PA (0608)                    Page 4 of 16                    Form 3039  1/01

11/23/2005 10:52:51

full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be

11/23/2005 10:52:51

paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

AM6PA (0508)             Page 6 of 16        Initials: JJK BK        Form 3039  1/01

11/23/2005 10:52:51

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender

AM6PA (0505)                                Page 7 of 18                    Form 3039  1/01

Initials: JJK
B.K

11/23/2005 10:52:51

otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

AM6PA (0508)                    Page 8 of 16          Initials: JJK          Form 3039  1/01

11/23/2005 10:52:51

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

AM6PA (0508)                          Page 9 of 16          Initials: JJK   B.K          Form 3039  1/01

11/23/2005  10:52:51

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

AM6PA (0508)                      Page 10 of 16          Initials: JJK / B.K.           Form 3039  1/01

11/23/2005 10:52:51

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless

Initials: SJK
B. K.

11/23/2005 10:52:51

Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable

AM6PA (0508)                    Page 12 of 16                    Initials: ___    Form 3039  1/01

11/23/2005 10:52:51

attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental

AM6PA (0508)                    Page 13 of 18          Initials: SJK    B. K.          Form 3039  1/01

11/23/2005  10:52:51

Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

Initials: JJK
B. K

AM6PA (0508)                    Page 14 of 16                    Form 3039  1/01

11/23/2005 10:52:51

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          JOSEPH J KILIAN                 -Borrower

                                          _____ (Seal)
_____          BARBARA KILIAN                  -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                -Borrower

AM6PA (0608)                    Page 15 of 16                    Form 3039  1/01
11/23/2005 10:52:51

JJK
BK

COMMONWEALTH OF PENNSYLVANIA                    County ss:  PHILADELPHIA

On this, the ___23ᴬᴴ___ day of _NOVEMBER_ _2005_ before me,
          Day                    Month/Year
the undersigned officer, personally appeared
___JOSEPH J. KELIAN_____
___BARBARA KELIAN_____

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged that he/she/they executed the same for the purposes herein
contained.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires: 05-03-2008

| NOTARIAL SEAL |
| MARC R CLARK |
| Notary Public |
| CITY OF PHILADELPHIA,PHILADELPHIA COUNTY |
| My Commission Expires May 3, 2008 |

                                        Marc R. Clark
                    Title of Officer

Certificate of Residence

I, _____, do hereby certify that the correct

address of the within-named Mortgagee is _1100 TOWN and COUNTRY_

_Drive 200, Orange, Ca 92868_

Witness my hand this ___23___ day of ___11 2005___
                       Day                    Month/Year

                    Agent of Mortgagee

                                        11/23/2005 10:52:51 AM

1 of 2

## SCHEDULE C

### LEGAL DESCRIPTION

Commitment Number                                                              File Number

sell, release and confirm unto the said ...

the entireties,

PREMISES "A"                                                  14

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE on the Southeast side of Horrocks Street (Sixty feet wide) in the 62nd Ward of the City of Philadelphia and described according to a plan and survey thereof made by Amos B. Engle, Esquire, Surveyor and Regulator of the Tenth District of the City of philadelphia, dated the Fourth day of October, A.D., 1939, as follows to wit:

BEGINNING at a distance of Four Hundred thirty-seven feet Eight and one-half inches Northeastwardly from the Northeast side of VanKirk Street (Seventy feet wide), thence extending North Thirty-seven degrees Forty-one minutes Fifty-three seconds East along the said Southeast side of Horrocks Street Fifteen feet Ten and one-half inches to a point; thence extending South Fifty-two degrees Eighteen minutes seven seconds East Twenty-seven feet three inches to a point an angle; thence extending South Fifty-two degrees Nine minutes Thirty-seven seconds East passing through the center of the party wall between these premises and the premises adjacent to it on the Northeast Fifty feet Six inches to a point on angle; thence extending further South Fifty-two degrees Eighteen Minutes Seven seconds East Twenty-seven feet three inches to a point in the center line of a certain Fifteen Feet wide driveway which extends Southwestwardly into the said VanKirk Street and Northeastwardly into Comly Street (Sixty feet wide); thence extending South Thirty-seven degrees Forty-one minutes Fifty-three seconds West along the center line of the said Fifteen feet driveway Fifteen feet Eleven inches to a point; thence extending North Fifty-two degrees Eighteen minutes Seven seconds West Twenty-seven feet three

2 of 2

inches to a point an angle; thence extending North Fifty-two degrees
six minutes Seven seconds West passing through the center of the party
wall between those premises and the premises adjacent to it on the
southwest Forty-seven feet six inches to a point an angle; thence
extending further North Fifty-two degrees Eighteen minutes seven
seconds West thirty feet three inches to the said Southeast side of
Horrocks Street and the first mentioned point and place of beginning.

BEING PREMISES:    5955 Horrocks Street

TOGETHER with the free and common use, right, liberty and privilege of
the above mentioned driveway, as and for a driveway, passageway and
watercourse at all times hereafter forever in common with the other
owners, tenants and occupiers of the lots of ground bounding thereon
and entitled to the use thereof, SUBJECT, however to the proportionate
part of the expense of keeping said driveway in good order, condition and
repair.


PREMISES B

AND ALSO, ALL THAT CERTAIN lot or piece of ground.

SITUATE beginning at a point on the Northwestwardly side of
Sylvester Street (Fifty feet wide) at the distance of Four hundred
thirty-seven feet Eight and one-half inches Northeastwardly from the
Northeastwardly side of VanKirk Street (Seventy feet wide) in the
62nd Ward of the City of Philadelphia.

CONTAINING in front or breadth on said Sylvester Street Fifteen feet
Ten and one-half inches and extending of that width in length or
depth Northwestwardly between parallel lines at right angles to the
said Sylvester Street One Hundred five feet to the center line of a
certain Fifteen feet wide driveway which extends Southwestwardly
into the said VanKirk Street and Northeastwardly into Comly Street
(Sixty feet wide).

REAR of 5955 Horrocks Street


BEING the same premises which Joseph J. Kilian and Barbara King Kilian, his wife, by deed
dated 2/1/1994 and recorded 2/9/1994 in Philadelphia County in book VCS498 on page 443,
granted and conveyed unto Joseph J. Kilian and Barbara Kilian, his wife.

BRT Number

REFINANCE MORTGA
LO:
US Recordings

| eRecorded in Philadelphia, PA | Doc Id: 51454209 |
|---|---|
| 06/01/2006 10:30A | Receipt #: 504720 |
| Page 1 of 4 | Rec Fee: $124.50 |
| Commissioner of Records | Doc Code: A |

From: AMERIQUEST MORTGAGE COMPANY
To: CITIFINANCIAL MORTGAGE COMPANY, INC.

RETURN TO:
S. A. Wileman
Orion Financial Group, Inc.
2860 Exchange Blvd. # 100
Southlake, TX 76092

### Assignment of Mortgage          Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, AMERIQUEST MORTGAGE COMPANY 505 South Main Street, #6000, Orange, CA 92868 (Assignor) by these presents does assign, and set over, without recourse, to CITIFINANCIAL MORTGAGE COMPANY, INC. 1111 Northpoint Drive, Bldg 4, Suite 100, Coppell, TX 75019 (Assignee) the described mortgage, together with certain note(s) described with all interest, all liens, any rights due or to become due thereon, executed by JOSEPH J KILIAN AND BARBARA KILIAN, HIS WIFE to AMERIQUEST MORTGAGE COMPANY.   Said mortgage Dated: 11/23/2005 is recorded in the State of PA, County of Philadelphia on 12/10/2005, as Instrument 51334460 AMOUNT: $ 75,062.00   SEE ATTACHED EXHIBIT A

Property Address: 5955 HORROCKS STREET, PHILADELPHIA PA 19149

IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed by its proper officer. Executed on: May 31, 2006
          AMERIQUEST MORTGAGE COMPANY

By:    

          M. E. Wileman, Authorized Signator          KILIAN CITI JJB *06019829*

State of Texas, County of Tarrant
On 5/31/2006, before me, the undersigned, personally appeared M. E. Wileman, who acknowledged that he/she is Authorized Signator of/for AMERIQUEST MORTGAGE COMPANY and that he/she executed the foregoing instrument and that such execution was done as the free act and deed of AMERIQUEST MORTGAGE COMPANY


A. TUCKER
Notary Public, State of Texas
My Commission Expires
April 20, 2010

          A. Tucker

          Notary public, A. Tucker
          My commission expires: April 20, 2010

                    PA  Philadelphia                    CITI-W/AMERIMTGCO

The Assignee hereby certifies that the precise residence is
1111 Northpoint Drive, Bldg 4, Suite 100, Coppell, TX 75019.

# Exhibit A

PREMISES "A"

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS
AND       IMPROVEMENTS THEREON ERECTED.

SITUATE ON THE SOUTHEAST SIDE OF HORROCKS STREET (SIXTY
FEET      WIDE) IN THE 62ND WARD OF THE CITY OF PHILADELPHIA
AND DESCRIBED      ACCORDING TO  A PLAN AND SURVEY  THEREOF
MADE BY AMOS B ENGLE,    ESQUIRE, SURVEYOR AND REGULATOR OF
THE TENTH DISTRICT OF THE   CITY OF PHILADELPHIA, DATED THE
FOURTH DAY OF OCTOBER, AD 1939  AS    FOLLOWS TO WIT:
BEGINNING AT A DISTANCE OF FOUR HUNDRED THIRTY-SEVEN FEET
EIGHT      AND ONE-HALF INCHES NORTHEASTWARDLY FROM THE
NORTHEAST SIDE OF     VANKIRK STREET (SEVENTY FEET WIDE)
THENCE EXTENDING NORTH     THIRTY-SEVEN DEGREES FORTY-ONE
MINUTES FIFTY-THREE SECONDS EAST     ALONG THE SAID
SOUTHEAST SIDE OF HORROCKS STREET FIFTEEN FEET   TEN AND
ONE-HALF INCHES TO A POINT; THENCE EXTENDING SOUTH
FIFTY-TWO DEGREES EIGHTEEN MINUTES SEVEN SECONDS EAST
TWENTY-SEVEN FEET   THREE INCHES TO A POINT AN ANGLE;
THENCE   EXTENDING SOUTH   FIFTY-TWO DEGREES NINE MINUTES
THIRTY-SEVEN   SECONDS EAST   PASSING THROUGH THE CENTER
OF THE PARTY WALL   BETWEEN THESE   PREMISES AND THE
PREMISES ADJACENT TO IT ON THE   NORTHEAST FIFTY   FEET SIX
INCHES TO A POINT ON ANGLE; THENCE   EXTENDING FURTHER
SOUTH FIFTY-TWO DEGREES EIGHTEEN MINUTES SEVEN SECONDS EAST
TWENTY-SEVEN FEET THREE INCHES TO A POINT IN THE   CENTER
LINE OF A CERTAIN FIFTEEN FEET  WIDE DRIVEWAY WHICH
EXTENDS SOUTHWESTWARDLY INTO THE SAID VANKIRK STREET AND
NORTHEASTWARDLY INTO  COMLY  STREET (SIXTY FEET WIDE);
THENCE   EXTENDING SOUTH THIRTY-SEVEN  DEGREES FORTY-ONE
MINUTES   FIFTY-THREE SECONDS WEST ALONG THE  CENTER LINE
OF THE SAID    FIFTEEN FEET DRIVEWAY FIFTEEN FEET ELEVEN
INCHES TO A POINT;   THENCE EXTENDING NORTH FIFTY-TWO
                         CITI-W/AMERIMTGCO

          Philadelphia County,  PA

# Exhibit A

DEGREES  EIGHTEEN MINUTES SEVEN    SECONDS WEST TWENTY-SEVEN
FEET THREE  INCHES TO A POINT ON  ANGLE; THENCE EXTENDING
NORTH FIFTY-TWO  DEGREES SIX MINUTES  SEVEN  SECONDS WEST
PASSING THROUGH THE CENTER OF THE PARTY WALL  BETWEEN THESE
PREMISES AND THE PREMISES ADJACENT TO IT ON THE  SOUTHWEST
FORTY-SEVEN FEET SIX INCHES TO A POINT AN  ANGLE;  THENCE
EXTENDING FURTHER NORTH FIFTY-TWO DEGREES EIGHTEEN  MINUTES
SEVEN  SECONDS WEST THIRTY THREE INCHES TO THE SAID
SOUTHEAST SIDE  OF HORROCKS STREET AND THE FIRST MENTIONED
POINT  AND PLACE OF  BEGINNING.
BEING PREMISES: 5955 HORROCKS STREET
TOGETHER WITH THE FREE AND COMMON USE, RIGHT , LIBERTY AND
PRIVILEGE OF  THE ABOVE MENTIONED DRIVEWAY, AS AND FOR A
DRIVEWAY, PASSAGEWAY AND  WATERCOURSE AT ALL TIMES
HEREAFTER  FOREVER IN  COMMON WITH THE OTHER OWNERS,
TENANTS AND OCCUPIERS  OF THE LOTS OF GROUND BOUNDING
THEREON AND ENTITLED TO THE USE  THEREOF, SUBJECT , HOWEVER
TO THE PROPORTIONATE PART OF THE  EXPENSE OF KEEPING  SAID
DRIVEWAY IN GOOD ORDER, CONDITION AND  REPAIR.
PREMISES B
AND ALSO, ALL THAT CERTAIN LOT OR PIECE OF GROUND,
SITUATE BEGINNING AT A POINT ON THE NORTHWESTWARDLY SIDE OF
SYLVESTER STREET (FIFTY FEET WIDE) AT THE DISTANCE OF FOUR
HUNDRED THIRTY-SEVEN FEET EIGHT AND ONE-HALF INCHES
NORTHEASTWARDLY FROM THE NORTHEASTWARDLY SIDE OF VANKIRK
STREET  (SEVENTY FEET WIDE) IN THE  62ND WARD OF THE CITY
OF  PHILADELPHIA.
CONTAINING IN FRONT OF BREADTH ON SAID SYLVESTER STREET
FIFTEEN  FEET TEN AND ONE-HALF INCHES AND EXTENDING OF THAT
WIDTH IN  LENGTH OR DEPTH NORTHWESTWARDLY BETWEEN PARALLEL
LINES AT RIGHT  ANGLES TO THE SAID SYLVESTER STREET ONE
HUNDRED FIVE FEET TO THE CENTER LINE OF A CERTAIN FIFTEEN
                                        CITI-W/AMERIMTGCO
              Philadelphia County,  PA

# Exhibit A

FEET WIDE DRIVEWAY WHICH  EXTENDS SOUTHWESTWARDLY IN TO THE
SAID VANKIRK STREET AND  NORTHEASTWARDLY INTO COMLY STREET
(SIXTY FEET WIDE).
REAR OF 5955 HORROCKS STREET
BEING THE SAME PREMISES WHICH JOSEPH J KILIAN AND BARBARA
KING KILIAN,HIS WIFE BY DEED DATED 2/1/1994 AND RECORDED
2/9/1994 IN PHILADELPHIA COUNTY IN BOOK VCS 498 ON PAGE 443
GRANTED AND CONVEYED UNTO JOSEPH J KILIAN AND BARBARA
KILIAN, HIS WIFE
BRT NUMBER: 621355700

CITI-W/AMERIMTGCO

Philadelphia County,  PA

52157972  Page 2 of 4
12/18/2009 10:50AM

Prepared By: Angela Soler

WHEN RECORDED MAIL TO:
Bayview Loan Servicing, LLC
Attn: Jennifer McGovern
4425 Ponce De Leon, 5th Floor
Coral Gables, Florida 33146

BV LOAN N

LOAN AMOUNT: $75,062.00

## Assignment of Mortgage

FOR VALUE RECEIVED, the undersigned as ("ASSIGNOR/GRANTOR"), hereby grants, conveys, assigns to

CITIMORTGAGE, INC.

("Assignee/Grantee") all beneficial interest under that certain Mortgage dated: 11/23/2005 and executed by:  JOSEPH J

KILIAN AND BARBARA KILIAN, HIS WIFE, borrower(s) to AMERIQUEST MORTGAGE COMPANY, Original

Lender, certain Mortgage recorded in Instrument No. 51334460, in the Official Records of PHILADELPHIA County, State

of PA, covering the following described property:       recorded on 12/10/2005

5955 HORROCKS STREET, PHILADELPHIA, PA 19149
Also see attached Exhibit A for a complete legal description.

mortgage amount: $75,062.00
Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and
all rights accrued or to accrue under said Document.

Dated: October 26, 2009

ASSIGNOR: BAYVIEW LOAN SERVICING, LLC
4425 Ponce De Leon Blvd, 5th Floor, Coral Gables, FL 33146

By:
ROBERT G. HALL, Vice-President

STATE OF FLORIDA        )
                        ) SS
COUNTY OF MIAMI-DADE    )

On this, October 26, 2009, before me ANISSA HICKERSON, the undersigned officer, personally appeared ROBERT G.
HALL, who acknowledged himself to be the Vice-President of BAYVIEW LOAN SERVICING, LLC, and that he as
such, being authorized to do so, executed, the foregoing instrument for the purposes therein contained by signing the name of
the corporation by himself as Vice-President.

In witness whereof, I hereunto set my hand and official seal.

ANISSA HICKERSON
NOTARY PUBLIC - STATE OF FLORIDA
Commission #DD614525
Expires: NOV. 14, 2010

By:
Notary Public, ANISSA HICKERSON
11/14/2010, DD 614525

5215/972   Page 3 of 4
12/18/2009 10:50AM

1 of 2

## SCHEDULE C
### LEGAL DESCRIPTION

Commitment Numb.

File Numb

sell, release and ~~~~~ ~~~~~ ~~~~~ ~~~~~ ~~~
the entireties,
PREMISES "A"

ALL THAT CERTAIN lot or piece of ground with the buildings and
improvements thereon erected.

SITUATE on the Southeast side of Horrocks Street (Sixty feet wide)
in the 62nd Ward of the City of Philadelphia and described according
to a plan and survey thereof made by Amos B. Engle, Esquire, Surveyor
and Regulator of the Tenth District of the City of Philadelphia,
dated the Fourth day of October, A.D., 1933, as follows to wit:

BEGINNING at a distance of Four Hundred thirty-seven feet Eight and
one-half inches Northeastwardly from the Northeast side of VanKirk
Street (Seventy feet wide), thence extending North Thirty-seven
degrees Forty-one minutes Fifty-three seconds East along the said
Southeast side of Horrocks Street Fifteen feet Ten and one-half inches
to a point; thence extending South Fifty-two degrees Eighteen minutes
seven seconds East Twenty-seven feet three inches to a point an angle;
thence extending South Fifty-two degrees Nine minutes Thirty-seven
seconds East passing through the center of the party wall between
these premises and the premises adjacent to it on the Northeast Fifty
feet Six inches to a point on angle; thence extending further South
Fifty-two degrees Eighteen Minutes Seven seconds East Twenty-seven feet
three inches to a point in the center line of a certain Fifteen Feet
wide driveway which extends Southwestwardly into the said VanKirk
Street and Northeastwardly into Comly Street (Sixty feet wide); thence
extending South Thirty-seven degrees Forty-one minutes Fifty-three
seconds West along the center line of the said Fifteen feet driveway
Fifteen feet Eleven inches to a point; thence extending North Fifty-
two degrees Eighteen minutes Seven seconds West Twenty-seven feet three

Case ID:

2 of 2

inches to a point an angle; thence extending North Fifty-two degrees
Six minutes seven seconds West passing through the center of the party
wall between those premises and the premises adjacent to it on the
southwest Forty-seven feet six inches to a point an angle; thence
extending further North Fifty-two 'degrees Eighteen minutes seven
seconds West thirty feet three inches to the said Southeast side of
Horrocks Street and the first mentioned point and place of beginning.

BEING PREMISES:   5955 Horrocks Street

TOGETHER with the free and common use, right, liberty and privilege of
the above mentioned driveway, as and for a driveway, passageway and
watercourse at all times hereafter forever in common with the other
owners, tenants and occupiers of the lots of ground bounding thereon
and entitled to the use thereof, SUBJECT, however to the proportionate
part of the expense of keeping said driveway in good order, condition and
repair.


PREMISES B

AND ALSO, ALL THAT CERTAIN lot or piece of ground.

SITUATE beginning at a point on the Northwestwardly side of
Sylvester Street (Fifty feet wide) at the distance of Four hundred
thirty-seven feet Eight and one-half inches Northeastwardly from the
Northeastwardly side of VanKirk Street (Seventy feet wide) in the
62nd Ward of the City of Philadelphia.

CONTAINING in front or breadth on said Sylvester Street Fifteen feet
Ten and one-half inches and extending of that width in length or
depth Northwestwardly between parallel lines at right angles to the
said Sylvester Street One Hundred five feet to the center line of a
certain Fifteen feet wide driveway which extends Southwestwardly
into the said VanKirk Street and Northeastwardly into Comly Street
(Sixty feet wide).

REAR of 5955 Horrocks Street

BEING the same premises which Joseph J. Kilian and Barbara King Kilian, his wife, by deed
dated 2/1/1994 and recorded 2/8/1994 in Philadelphia County in book VCS498 on page 443,
granted and conveyed unto Joseph J. Kilian and Barbara Kilian, his wife.

BRT Number: 621356700

City of Philadelphia Department of Records

## RECORDING INFORMATION SUMMARY (RIS)

The information provided by you will be relied upon by the Department of Records for examination and indexing purposes. If there is any conflict between the RIS and the attached document, the information on the RIS shall prevail for examination and indexing purposes.

RETURN DOCUMENT TO:
Name: Mary Domnach, Paralegal
Address: Milstead and Associates, LLC
220 Lake Drive East, Suite 301
Cherry Hill, NJ 08002
Telephone: 856-482-1400

1. Type of Document:
☐ Deed
☐ Sheriff's Deed
☐ Deed of Condemnation
☐ Other Deed

☐ Mortgage
☐ Release of Mortgage
☒ Assignment of Mortgage
☐ Satisfaction of Mortgage

☒ Lease/Memorandum of Lease
☐ Assignment of Lease & Rent
☐ Easement
☐ Other _____ (specify)

2. Date of Document: 2 / 23 / 12
   month day year

3. Grantor/Mortgagor/Assignor/Lessor/ (a.) Citmortgage, Inc
   Other: (b.)
   (Last Name, First Name, Middle Initial)
   ☐ Additional names on Continuation Page of RIS

4. Grantee/Mortgagee/Assignee/Lessee/ (a.) Bayview Loan Servicing, LLC, a Delaware
   Other: (b.) Limited Liability Co.
   (Last Name, First Name, Middle Initial)
   ☐ Additional names on Continuation Page of RIS

5. Property Address:
   (a.) House No. & Street Name: 5955 Horrocks Street
   Condo Name (if applicable): _____ Unit # _____ Philadelphia, PA Zip Code: 19149
   BRT Account # (optional): _____ Parcel Identification Number (PIN) (optional): _____
   ☐ Additional addresses on Continuation Page of RIS

6. Grantee's Mailing Address (Deed Only):
   (If Grantee is at a different address than the Property Address listed in Section 5, complete this section.)
   Grantee or Designee Name: _____
   House No. & Street Name: _____
   City: _____ State: _____ Zip Code: _____

7. Recording Information to be Referenced. Mortgage to be released/satisfied/assigned/modified:
   (a.) Name of Original Mortgagee: Ameriquest Mortgage Company    Recorder's Index Information of Original Mortgage:
   Recording Date of Original Mortgage: 12 / 10 / 05     # 5733 4460
      month day year     Initials, Book and Page or Doc. ID#
   ☐ Additional references on Continuation Page of RIS

8. Optional Information
   ☐ Consolidation    ☐ Subdivision

Mary Domnach, Paralegal
Name

856 - 482 1400
Telephone Number

_____
Signature

52463245
Page: 1 of 3
03/26/2012 03:39PM

This Document Recorded
03/26/2012
03:39PM
Doc Code: A     Commissioner of Records, City of Philadelphia

Doc Id: 52463245
Receipt #: 1097780
Rec Fee: 198.00

82-337



52037412
Page: 1 of 7
03/16/2009 02:31PM

This Document Recorded
03/16/2009
02.31PM
Doc Code: A     Commissioner of Records, City of Philadelphia

Doc Id 52037412
Receipt #: 783022
Rec Fee 124.50

CMI L
Assignee L/t
Effective Date: 03/07/2009

Page 1

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, CITIMORTGAGE, INC., SUCCESSOR IN INTEREST BY MERGER TO CITIFINANCIAL MORTGAGE COMPANY, INC., WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE , O'FALLON, MO 63368, (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to BAYVIEW LOAN SERVICING, LLC, WHOSE ADDRESS IS 4425 PONCE DE LEON BLVD 5TH FLOOR, CORAL GABLES, FL 33146, ITS SUCCESSORS OR ASSIGNS. (ASSIGNEE)

Said mortgage dated 11/23/2005 in the amount of $75,062.00 made by JOSEPH J KILIAN AND BARBARA KILIAN to AMERIQUEST MORTGAGE COMPANY recorded on 12/10/2005, in the Office of the Recorder of Deeds of PHILADELPHIA County, Pennsylvania, in Book , Page (or Document No.51334460)

   See Exhibit attached for Assignments, Modifications etc

Mortgage Premise:5955 HORROCKS STREET
                PHILADELPHIA, PA 19149

In Witness whereof, the said Corporation has caused this instrument to be executed in its corporate name by CRYSTAL MOORE its VICE PRESIDENT and authorized signer, THIS 08TH DAY OF MARCH IN THE YEAR 2009

CITIMORTGAGE, INC., SUCCESSOR IN INTEREST BY MERGER TO CITIFINANCIAL MORTGAGE COMPANY, INC.

By:_____
    CRYSTAL MOORE VICE PRESIDENT

Bryan J. Bly
Notary Public, State of Florida
Commission # DD 691055
Expires July 01, 2011
Bonded Through National Notary Assn.

foom3/PRMPHI

CMI L#
Assignee 1
Effective Date: 03/07/2009

ASSIGNMENT OF MORTGAGE             Page 2

STATE OF FLORIDA          COUNTY OF PINELLAS
On 03/08/2009, before me, BRYAN J. BLY the Undersigned, Notary Public, personally appeared CRYSTAL
MOORE, who acknowledged him/herself to be the VICE PRESIDENT of CITIMORTGAGE, INC., SUCCESSOR
IN INTEREST BY MERGER TO CITIFINANCIAL MORTGAGE COMPANY, INC. a corporation, and that s/he
as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing
the name of the corporation by themselves as such corporate officers.
IN WITNESS WHEREOF, I hereunto set my hand and official seal.

BRYAN J. BLY                    Notary Public
My commission expires: 07/01/2011

Bryan J. Bly
Notary Public, State of Florida
Commission # DD 691055
Expires July 01, 2011
Bonded Through National Notary Assn.

I _____, do certify that the address of the above assignee is:
BAYVIEW LOAN SERVICING, LLC, WHOSE ADDRESS IS 4425 PONCE DE LEON BLVD 5TH
FLOOR, CORAL GABLES, FL 33146, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)

Prepared by:
Jessica Fretwell/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
Return To:
CitiMortgage, Inc.
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

form5/FRMPH1

Loan Num                    )              Page 3
Assignment of Mortgage from:
CITIMORTGAGE, INC., SUCCESSOR IN INTEREST BY MERGER TO CITIFINANCIAL MORTGAGE COMPANY, INC., WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE , O'FALLON, MO 63368, (ASSIGNOR),
to:
BAYVIEW LOAN SERVICING, LLC, WHOSE ADDRESS IS 4425 PONCE DE LEON BLVD 5TH FLOOR, CORAL GABLES, FL 33146, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)

Mortgagor: JOSEPH J KILIAN AND BARBARA KILIAN

When Recorded Return To:
CitiMortgage, Inc.
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

All that certain lot or piece of ground situated in
Mortgage Premise: 5955 HORROCKS STREET
        PHILADELPHIA, PA 19149
PHILADELPHIA
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said mortgage.

SEE ATTACHED EXHIBIT A

Loan No:

## 'EXHIBIT A'

Assignments, Modifications, Consolidations Exhibit

Assignment: AMERIQUEST MORTGAGE COMPANY TO CITIFINANCIAL
MORTGAGE COMPANY, INC. DATED 5/31/06 RECD 6/1/06 INSTR# 51454209

# Exhibit A

PREMISES "A"

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND      IMPROVEMENTS THEREON ERECTED.

SITUATE ON THE SOUTHEAST SIDE OF HORROCKS STREET (SIXTY FEET      WIDE) IN THE 62ND WARD OF THE CITY OF PHILADELPHIA AND DESCRIBED      ACCORDING TO A PLAN AND SURVEY  THEREOF MADE BY AMOS B ENGLE,      ESQUIRE, SURVEYOR AND REGULATOR OF THE TENTH DISTRICT OF THE   CITY OF PHILADELPHIA, DATED THE FOURTH DAY OF OCTOBER, AD 1939 AS    FOLLOWS TO WIT: BEGINNING AT A DISTANCE OF FOUR HUNDRED THIRTY-SEVEN FEET EIGHT    AND ONE-HALF INCHES NORTHEASTWARDLY FROM THE NORTHEAST SIDE OF    VANKIRK STREET (SEVENTY FEET WIDE) THENCE EXTENDING NORTH      THIRTY-SEVEN DEGREES FORTY-ONE MINUTES FIFTY-THREE SECONDS EAST      ALONG THE SAID SOUTHEAST SIDE OF HORROCKS STREET FIFTEEN FEET    TEN AND ONE-HALF INCHES TO A POINT; THENCE EXTENDING SOUTH FIFTY-TWO DEGREES EIGHTEEN MINUTES SEVEN SECONDS EAST TWENTY-SEVEN FEET    THREE INCHES TO A POINT AN ANGLE; THENCE    EXTENDING SOUTH   FIFTY-TWO DEGREES NINE MINUTES THIRTY-SEVEN    SECONDS EAST    PASSING THROUGH THE CENTER OF THE PARTY WALL   BETWEEN THESE    PREMISES AND THE PREMISES ADJACENT TO IT ON THE   NORTHEAST FIFTY    FEET SIX INCHES TO A POINT ON ANGLE; THENCE    EXTENDING FURTHER SOUTH FIFTY-TWO DEGREES EIGHTEEN MINUTES SEVEN SECONDS EAST TWENTY-SEVEN FEET THREE INCHES TO A POINT IN THE    CENTER LINE OF A CERTAIN FIFTEEN FEET  WIDE DRIVEWAY WHICH EXTENDS SOUTHWESTWARDLY INTO THE SAID VANKIRK STREET AND NORTHEASTWARDLY INTO  COMLY   STREET (SIXTY FEET WIDE); THENCE    EXTENDING SOUTH THIRTY-SEVEN  DEGREES FORTY-ONE MINUTES    FIFTY-THREE SECONDS WEST ALONG THE   CENTER LINE OF THE SAID    FIFTEEN FEET DRIVEWAY FIFTEEN FEET ELEVEN INCHES TO A POINT;    THENCE EXTENDING NORTH FIFTY-TWO

                                        CITI-W/AMERIMTGCO
        Philadelphia County,  PA

# Exhibit A

DEGREES  EIGHTEEN MINUTES SEVEN      SECONDS WEST TWENTY-SEVEN
FEET THREE   INCHES TO A POINT ON  ANGLE; THENCE EXTENDING
NORTH FIFTY-TWO  DEGREES SIX MINUTES    SEVEN   SECONDS WEST
PASSING THROUGH THE CENTER OF THE PARTY WALL   BETWEEN THESE
PREMISES AND THE PREMISES ADJACENT TO IT ON THE   SOUTHWEST
FORTY-SEVEN FEET SIX INCHES TO A POINT AN   ANGLE;   THENCE
EXTENDING FURTHER NORTH FIFTY-TWO DEGREES EIGHTEEN   MINUTES
SEVEN   SECONDS WEST THIRTY FEET THREE INCHES TO THE  SAID
SOUTHEAST SIDE  OF HORROCKS STREET AND THE FIRST MENTIONED
POINT   AND PLACE OF  BEGINNING.
BEING PREMISES: 5955 HORROCKS STREET
TOGETHER WITH THE FREE AND COMMON USE, RIGHT , LIBERTY AND
PRIVILEGE OF  THE ABOVE MENTIONED DRIVEWAY, AS AND FOR A
DRIVEWAY, PASSAGEWAY AND  WATERCOURSE AT ALL TIMES
HEREAFTER  FOREVER IN  COMMON WITH THE OTHER OWNERS,
TENANTS AND OCCUPIERS  OF THE LOTS OF GROUND BOUNDING
THEREON AND ENTITLED TO THE USE  THEREOF, SUBJECT , HOWEVER
TO THE PROPORTIONATE PART OF THE  EXPENSE OF KEEPING  SAID
DRIVEWAY IN GOOD ORDER, CONDITION AND  REPAIR.
PREMISES B
AND ALSO, ALL THAT CERTAIN LOT OR PIECE OF GROUND,
SITUATE BEGINNING AT A POINT ON THE NORTHWESTWARDLY SIDE OF
SYLVESTER STREET (FIFTY FEET WIDE) AT THE DISTANCE OF FOUR
HUNDRED THIRTY-SEVEN FEET EIGHT AND ONE-HALF INCHES
NORTHEASTWARDLY FROM THE NORTHEASTWARDLY SIDE OF VANKIRK
STREET  (SEVENTY FEET WIDE) IN THE  62ND WARD OF THE CITY
OF  PHILADELPHIA.
CONTAINING IN FRONT OF BREADTH ON SAID SYLVESTER STREET
FIFTEEN  FEET TEN AND ONE-HALF INCHES AND EXTENDING OF THAT
WIDTH IN  LENGTH OR DEPTH NORTHWESTWARDLY BETWEEN PARALLEL
LINES AT RIGHT  ANGLES TO THE SAID SYLVESTER STREET ONE
HUNDRED FIVE FEET TO THE CENTER LINE OF A CERTAIN FIFTEEN

CITI-W/AMERIMTGCO

Philadelphia County,  PA

## Exhibit A

FEET WIDE DRIVEWAY WHICH EXTENDS SOUTHWESTWARDLY IN TO THE
SAID VANKIRK STREET AND NORTHEASTWARDLY INTO COMLY STREET
(SIXTY FEET WIDE).
REAR OF 5955 HORROCKS STREET
BEING THE SAME PREMISES WHICH JOSEPH J KILIAN AND BARBARA
KING KILIAN, HIS WIFE BY DEED DATED 2/1/1994 AND RECORDED
2/9/1994 IN PHILADELPHIA COUNTY IN BOOK VCS 498 ON PAGE 443
GRANTED AND CONVEYED UNTO JOSEPH J KILIAN AND BARBARA
KILIAN, HIS WIFE
BRT NUMBER:        '00

CITI-W/AMERIMTGCO
Philadelphia County,  PA

Prepared by Milstead and Associates, LLC
When recorded please return to:
Milstead & Associates, LLC
220 Lake Drive East, Ste 301
Cherry Hill, New Jersey 08002
BY ᶻᴺᵈᵉᵒᵒᵇ

### ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that CITIMORTGAGE, INC., BY ITS ATTORNEY- IN FACT BAYVIEW LOAN SERVICING, LLC, (Assignor), in consideration of the sum of $1.00 (One) Dollar(s) lawful money of the United States, to Assignor in hand paid by Bayview Loan Servicing, LLC, a Delaware Limited Liability Company (Assignee) at or before the ensealing and delivery of these presents, the receipt whereby is hereby acknowledged, has granted, bargained, sold, assigned, transferred and set over, and by these presents does grant, bargain, sell, assign, transfer and set over unto the said Assignee a certain Indenture of Mortgage bearing the date of November 23, 2005 in the amount of $75,062.00 made by Joseph J. Kilian and Barbara Kilian, given to Ameriquest Mortgage Company. Said mortgage was recorded on December 10, 2005 under Instrument Number 51334460 and assigned to CITIFINANCIAL MORTGAGE COMPANY, INC., recorded June 1, 2006 under Instrument 51454209 and further assigned to BAYVIEW LOAN SERVICING, LLC, recorded March 16, 2009 under Instrument 52037412 and further assigned to CITIMORTGAGE, INC., recorded December 18, 2009 under Instrument 52157972 in the public records of Philadelphia County, Pennsylvania, upon the following described piece of parcel of land, to wit. Property more commonly known as: 5955 Horrocks Street, Philadelphia, PA 19149 / Parcel 621355700

*The undersigned Assignor hereby certifies the precise address of the Assignee, Bayview Loan Servicing, LLC, a Delaware Limited Liability Company is 4425 Ponce DeLeon Boulevard, Coral Gables, FL 33146.*

Together with the Note and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on the 23, day of February, 2012.

CITIMORTGAGE, INC., BY ITS ATTORNEY-
IN FACT BAYVIEW LOAN SERVICING, LLC,
AT 4425 Ponce de Leon Blvd., Coral Gables,
333146

By: _____
PETER L. SUAREZ, Assistant Vice-President

### CORPORATE ACKNOWLEDGEMENT

STATE OF FLORIDA  :
                  : S.S.
COUNTY OF MIAMI-DADE:

On this, the 23, day of February 2012, before me, Anissa Hickerson, appeared PETER L. SUAREZ, Vice-President BAYVIEW LOAN SERVICING, LLC SERVING AS ATTORNEY IN-FACT FOR CITIMORTGAGE, INC., who prove to me on the basis of satisfactory evidence to be the persons whose names are subscribed to the within instrument and acknowledged to me that their authorized capacities, and that by their signatures on the instrument the persons, or the entity upon behalf of which the person acted, executed the instrument.

In witness whereof, I hereunto set my hand and official seal.

ANISSA HICKERSON
Notary Public - State of Florida
My Comm. Expires Nov 14, 2014
Commission # EE 34649
Bonded Through National Notary Assn.

ANISSA HICKERSON

1 of 2

## SCHEDULE C

### LEGAL DESCRIPTION

Commitment Number. . . .                                                    File Numt

sell, release and confirm unto and unto - - -
the entireties,
PREMISES "A"

ALL THAT CERTAIN lot or piece of ground with the buildings and
improvements thereon erected.   .    .                      .    .

SITUATE on the Southeast side of Horrocks Street (Sixty feet wide)
in the 62nd Ward of the City of Philadelphia and described according
to a plan and survey thereof made by Amos B. Engle, Esquire, Surveyor
and Regulator of the Tenth District of the City of philadelphia,
dated the fourth day of October, A.D., 1939, as follows to-wit:

BEGINNING at a distance of Four Hundred thirty-seven feet Eight and
one-half inches Northeastwardly from the Northeast side of VanKirk
Street (Seventy feet wide), thence extending North Thirty-seven
degrees Forty-one minutes Fifty-three seconds East along the said
Southeast side of Horrocks Street Fifteen feet Ten and one-half inches
to a point; thence extending South Fifty-two degrees Eighteen minutes
seven seconds East Twenty-seven feet three inches to a point an angle;
thence extending South Fifty-two degrees Nine minutes Thirty-seven
seconds East passing through the center of the party wall between
these premises and the premises adjacent to it on the Northeast Fifty
feet Six inches to a point on angle; thence extending further South
Fifty-two degrees Eighteen Minutes Seven seconds East Twenty-seven feet
three inches to a point in the center line of a certain Fifteen Feet
wide driveway which extends Southwestwardly into the said VanKirk
Street and Northeastwardly into Conly Street (Sixty feet wide); thence
extending South Thirty-seven degrees Forty-one minutes Fifty-three
seconds West along the center line of the said Fifteen feet driveway
Fifteen feet Eleven inches to a point; thence extending North Fifty-
two degrees Eighteen minutes Seven seconds West Twenty-seven feet three

Doc Id: 53132133          A
11/81/2018  81:88 PM    Date 1 of 5

This Document Recorded    Doc Id: 53132133  Doc Code: R
11/81/2018  81:88 PM   Receipt #:18-108788
Doc Fee: $225.88
Records Department, City of Philadelphia      MG

**Prepared By and Return To:**
Heather Neal
Collateral Department
Meridian Asset Services, Inc.
780 94th Avenue N., Suite 102
St. Petersburg, PT. 33702

PIN# 621355700

Loan No.
Svcr Ln 1

_____ Space above for Recorder's use

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, BAYVIEW LOAN SERVICING, LLC, whose address is 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL 33146, (ASSIGNOR), does hereby grant, assign and transfer to CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 2, whose address is C/O ALTISOURCE ASSET MANAGEMENT CORPORATION, 36C STRAND STREET, CHRISTIANSTED, USVI 00820, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 11/23/2005
Original Loan Amount: $75,062.00
Executed by (Borrower(s)): JOSEPH J KILIAN AND BARBARA KILIAN, HIS WIFE
Original Lender: AMERIQUEST MORTGAGE COMPANY
Filed of Record: In Book/Liber/Volume N/A, Page N/A,
Document/Instrument No: 51334460 in the Office of County Recorder of CITY OF PHILADELPHIA, PHILADELPHIA County, PA, Recorded on 12/18/2005.

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: 5955 HORROCKS STREET, PHILADELPHIA, PENNSYLVANIA 19149

53132133    Page 2 of 5    11/01/2016 01:38 PM

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____ AUG 2 2 2016

BAYVIEW LOAN SERVICING, LLC

By: _____ Jeremy Brantner              Witness Name: _____ Leonardo Nuñez
Title: _____ Vice President

I hereby certify the precise address of the within named CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 2 (Assignee) is C/O ALTISOURCE ASSET MANAGEMENT CORPORATION, 36C STRAND STREET, CHRISTIANSTED, USVI 00820.

_____

> A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of _____
County of _____

On _____ AUG 2 2 2016 _____ before me, _____ Rogelio A. Portal _____, a Notary Public, personally appeared _____ JEREMY BRANTNER _____ V.P. _____ of/for BAYVIEW LOAN SERVICING, LLC, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of _____ FLORIDA _____ that the foregoing paragraph is true and correct. I further certify _____ JEREMY BRANTNER _____ signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): _____ Rogelio A. Portal
My commission expires: _____

ROGELIO A. PORTAL
MY COMMISSION # EE 167189
EXPIRES: August 20, 2016
Bonded Thru Notary Public Underwriters

EXHIBIT "A"

PREMISES "A"

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS
AND     IMPROVEMENTS THEREON ERECTED.
SITUATE ON THE SOUTHEAST SIDE OF HORROCKS STREET (SIXTY
FEET      WIDE) IN THE 62ND WARD OF THE CITY OF PHILADELPHIA
AND DESCRIBED       ACCORDING TO A PLAN AND SURVEY THEREOF
MADE BY AMOS B ENGLE,     ESQUIRE, SURVEYOR AND REGULATOR OF
THE TENTH DISTRICT OF THE     CITY OF PHILADELPHIA, DATED THE
FOURTH DAY OF OCTOBER, AD 1939 AS     FOLLOWS TO WIT:
BEGINNING AT A DISTANCE OF FOUR HUNDRED THIRTY-SEVEN FEET
EIGHT      AND ONE-HALF INCHES NORTHEASTWARDLY FROM THE
NORTHEAST SIDE OF     VANKIRK STREET (SEVENTY FEET WIDE)
THENCE EXTENDING NORTH     THIRTY-SEVEN DEGREES FORTY-ONE
MINUTES FIFTY-THREE SECONDS EAST     ALONG THE SAID
SOUTHEAST SIDE OF HORROCKS STREET FIFTEEN FEET     TEN AND
ONE-HALF INCHES TO A POINT; THENCE EXTENDING SOUTH
FIFTY-TWO DEGREES EIGHTEEN MINUTES SEVEN SECONDS EAST
TWENTY-SEVEN FEET     THREE INCHES TO A POINT AN ANGLE;
THENCE  EXTENDING SOUTH   FIFTY-TWO DEGREES NINE MINUTES
THIRTY-SEVEN     SECONDS EAST     PASSING THROUGH THE CENTER
OF THE PARTY WALL     BETWEEN THESE     PREMISES AND THE
PREMISES ADJACENT TO IT ON THE     NORTHEAST FIFTY     FEET SIX
INCHES TO A POINT ON ANGLE; THENCE     EXTENDING FURTHER
SOUTH FIFTY-TWO DEGREES EIGHTEEN MINUTES SEVEN SECONDS EAST
TWENTY-SEVEN FEET THREE INCHES TO A POINT IN THE     CENTER
LINE OF A CERTAIN FIFTEEN FEET     WIDE DRIVEWAY WHICH
EXTENDS SOUTHWESTWARDLY INTO THE SAID VANKIRK STREET AND
NORTHEASTWARDLY INTO     COMLY     STREET (SIXTY FEET WIDE);
THENCE     EXTENDING SOUTH THIRTY-SEVEN   DEGREES FORTY-ONE
MINUTES     FIFTY-THREE SECONDS WEST ALONG THE   CENTER LINE
OF THE SAID     FIFTEEN FEET DRIVEWAY FIFTEEN FEET ELEVEN
INCHES TO A POINT;     THENCE EXTENDING NORTH FIFTY-TWO

DEGREES  EIGHTEEN MINUTES SEVEN   SECONDS WEST TWENTY-SEVEN
FEET THREE  INCHES TO A POINT ON  ANGLE; THENCE EXTENDING
NORTH FIFTY-TWO  DEGREES SIX MINUTES  SEVEN  SECONDS WEST
PASSING THROUGH THE CENTER OF THE PARTY WALL  BETWEEN THESE
PREMISES AND THE PREMISES ADJACENT TO IT ON THE  SOUTHWEST
FORTY-SEVEN FEET SIX INCHES TO A POINT AN  ANGLE;  THENCE
EXTENDING FURTHER NORTH FIFTY-TWO DEGREES EIGHTEEN  MINUTES
SEVEN  SECONDS WEST THIRTY FEET THREE INCHES TO THE SAID
SOUTHEAST SIDE  OF HORROCKS STREET AND THE FIRST MENTIONED
POINT  AND PLACE OF  BEGINNING.
BEING PREMISES: 5955 HORROCKS STREET
TOGETHER WITH THE FREE AND COMMON USE, RIGHT , LIBERTY AND
PRIVILEGE OF  THE ABOVE MENTIONED DRIVEWAY, AS AND FOR A
DRIVEWAY, PASSAGEWAY AND  WATERCOURSE AT ALL TIMES
HEREAFTER  FOREVER IN  COMMON WITH THE OTHER OWNERS,
TENANTS AND OCCUPIERS  OF THE LOTS OF GROUND BOUNDING
THEREON AND ENTITLED TO THE USE  THEREOF, SUBJECT , HOWEVER
TO THE PROPORTIONATE PART OF THE  EXPENSE OF KEEPING  SAID
DRIVEWAY IN GOOD ORDER, CONDITION AND  REPAIR.
PREMISES B
AND ALSO, ALL THAT CERTAIN LOT OR PIECE OF GROUND,
SITUATE BEGINNING AT A POINT ON THE NORTHWESTWARDLY SIDE OF
SYLVESTER STREET (FIFTY FEET WIDE) AT THE DISTANCE OF FOUR
HUNDRED THIRTY-SEVEN FEET EIGHT AND ONE-HALF INCHES
NORTHEASTWARDLY FROM THE NORTHEASTWARDLY SIDE OF VANKIRK
STREET  (SEVENTY FEET WIDE) IN THE  62ND WARD OF THE CITY
OF  PHILADELPHIA.
CONTAINING IN FRONT OF BREADTH ON SAID SYLVESTER STREET
FIFTEEN  FEET TEN AND ONE-HALF INCHES AND EXTENDING OF THAT
WIDTH IN  LENGTH OR DEPTH NORTHWESTWARDLY BETWEEN PARALLEL
LINES AT RIGHT  ANGLES TO THE SAID SYLVESTER STREET ONE
HUNDRED FIVE FEET TO THE CENTER LINE OF A CERTAIN FIFTEEN

53132133    Page 5 of 5    11/01/2016 01:38 PM

FEET WIDE DRIVEWAY WHICH EXTENDS SOUTHWESTWARDLY IN TO THE
SAID VANKIRK STREET AND  NORTHEASTWARDLY INTO COMLY STREET
(SIXTY FEET WIDE).
REAR OF 5955 HORROCKS STREET
BEING THE SAME PREMISES WHICH JOSEPH J KILIAN AND BARBARA
KING KILIAN, HIS WIFE BY DEED DATED 2/1/1994 AND RECORDED
2/9/1994 IN PHILADELPHIA COUNTY IN BOOK VCS 498 ON PAGE 443
GRANTED AND CONVEYED UNTO JOSEPH J KILIAN AND BARBARA
KILIAN, HIS WIFE
BRT NUMBER: 621355700

### Assignment Chain

| | |
|---|---|
| Mortgage | |
| Lender: | AMERIQUEST MORTGAGE COMPANY |
| Borrower: | JOSEPH J KILIAN AND BARBARA KILIAN, HIS WIFE |
| Amount: | $75,062.00 |
| Recorded: | 12/10/2005; INST# 51334460 |
| Assigned From: | AMERIQUEST MORTGAGE COMPANY |
| To: | CITIFINANCIAL MORTGAGE COMPANY, INC. |
| Recorded: | 06/01/2006 ; INST# 51454209 |
| Assigned From: | CITIMORTGAGE, INC., SUCCESSOR BY MERGER TO CITIFINANCIAL MORTGAGE COMPANY, INC. |
| To: | BAYVIEW LOAN SERVICING, LLC |
| Recorded: | 03/16/2009 ; INST# 52037412 |
| Assigned From: | BAYVIEW LOAN SERVICING, LLC |
| To: | CITIMORTGAGE, INC. |
| Recorded: | 12/18/2009 ; INST# 52157972 |
| Assigned From: | CITIMORTGAGE, INC. |
| To: | BAYVIEW LOAN SERVICING, LLC |
| Recorded: | 03/26/2012 ; INST# 52463245 |
| Assigned From: | BAYVIEW LOAN SERVICING, LLC |
| To: | CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 2 |
| Recorded: | To be recorded concurrently herewith |

eRecorded in Philadelphia PA   Doc Id: 53242103
07/21/2017 03:57 PM   Page 1 of 5   Rec Fee: $220.00
Receipt#: 17-75145
Records Department   Doc Code: A

Prepared By and Return To:
Paul Pugzlys
Collateral Department
Meridian Asset Services, Inc.
3201 34th Street South, Suite 310
St. Petersburg, FL 33711

_____   Space above for Recorder's use _____   _____
Loan Nc
Sver Ln ino:

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the
undersigned, CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB,
NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 2, whose address is C/O
ALTISOURCE ASSET MANAGEMENT CORPORATION, 36C STRAND STREET, CHRISTIANSTED,
USVI 00820, (ASSIGNOR), does hereby grant, assign and transfer to US BANK NATIONAL ASSOCIATION
AS LEGAL TITLE TRUSTEE FOR TRUMAN 2016 SC6 TITLE TRUST, whose address is U.S. BANK
CORPORATE TRUST SERVICES, DOCUMENT CUSTODY SERVICES, 1133 RANKIN STREET, SUITE
100, ST. PAUL, MN 55116, EP-MN-TMZD, (ASSIGNEE), its successors, transferees and assigns forever, all
beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all
liens, and any rights due or to become due thereon.

Date of Mortgage: 11/23/2005
Original Loan Amount: $75,062.00
Executed by (Borrower(s)): JOSEPH J KILIAN AND BARBARA KILIAN, HIS WIFE
Original Lender: AMERIQUEST MORTGAGE COMPANY
Filed of Record: In Book/Liber/Volume N/A, Page N/A,
Document/Instrument No: 51334460 in the Recording District of PHILADELPHIA, PA, Recorded on 12/10/2005.
MUNICIPALITY: CITY OF PHILADELPHIA, 62ND WARD

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: 5955 HORROCKS STREET, PHILADELPHIA, PENNSYLVANIA
19149

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: 6.30.17

CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 2, BY MERIDIAN ASSET SERVICES, INC., ITS ATTORNEY-IN-FACT

By: ROBERTO REHO

Witness Name: JASON MURCH

Title: VICE PRESIDENT
POA was recorded in Philadelphia County, PA
12/12/2016 Inst#53147198

I hereby certify the precise address of the within named US BANK NATIONAL ASSOCIATION AS LEGAL TITLE TRUSTEE FOR TRUMAN 2016 SC6 TITLE TRUST (*Assignee*) *is* U.S. BANK CORPORATE TRUST SERVICES, DOCUMENT CUSTODY SERVICES, 1133 RANKIN STREET, SUITE 100, ST. PAUL, MN 55116, EP-MN-TMZD.



---

| A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT |
| --- |

State of          FLORIDA
County of        PINELLAS

On 6.30.17_____, before me, GERALD E. MURCH, a Notary Public, personally appeared ROBERTO REHO, VICE PRESIDENT of/for MERIDIAN ASSET SERVICES, INC., AS ATTORNEY-IN-FACT FOR CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 2, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of FLORIDA that the foregoing paragraph is true and correct. I further certify ROBERTO REHO, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): GERALD E. MURCH
My commission expires: 2/13/2018

GERALD E. MURCH
MY COMMISSION # FF 092604
EXPIRES: February 13, 2018
Bonded Thru Budget Notary Services

EXHIBIT "A"

PREMISES "A"
ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS
AND     IMPROVEMENTS THEREON ERECTED.
SITUATE ON THE SOUTHEAST SIDE OF HORROCKS STREET (SIXTY
FEET     WIDE) IN THE 62ND WARD OF THE CITY OF PHILADELPHIA
AND DESCRIBED     ACCORDING TO  A PLAN AND SURVEY  THEREOF
MADE BY AMOS B ENGLE,     ESQUIRE, SURVEYOR AND REGULATOR OF
THE TENTH DISTRICT OF THE   CITY OF PHILADELPHIA, DATED THE
FOURTH DAY OF OCTOBER, AD 1939 AS    FOLLOWS TO WIT:
BEGINNING AT A DISTANCE OF FOUR HUNDRED THIRTY-SEVEN FEET
EIGHT     AND ONE-HALF INCHES NORTHEASTWARDLY FROM THE
NORTHEAST SIDE OF     VANKIRK STREET (SEVENTY FEET WIDE)
THENCE EXTENDING NORTH     THIRTY-SEVEN DEGREES FORTY-ONE
MINUTES FIFTY-THREE SECONDS EAST    ALONG THE SAID
SOUTHEAST SIDE OF HORROCKS STREET FIFTEEN FEET    TEN AND
ONE-HALF INCHES TO A POINT; THENCE EXTENDING SOUTH
FIFTY-TWO DEGREES EIGHTEEN MINUTES SEVEN SECONDS EAST
TWENTY-SEVEN FEET    THREE INCHES TO A POINT AN ANGLE;
THENCE   EXTENDING SOUTH   FIFTY-TWO DEGREES NINE MINUTES
THIRTY-SEVEN   SECONDS EAST   PASSING THROUGH THE CENTER
OF THE PARTY WALL   BETWEEN THESE   PREMISES AND THE
PREMISES ADJACENT TO IT ON THE   NORTHEAST FIFTY   FEET SIX
INCHES TO A POINT ON ANGLE; THENCE   EXTENDING FURTHER
SOUTH FIFTY-TWO DEGREES EIGHTEEN MINUTES SEVEN SECONDS EAST
TWENTY-SEVEN FEET THREE INCHES TO A POINT IN THE   CENTER
LINE OF A CERTAIN FIFTEEN FEET  WIDE DRIVEWAY WHICH
EXTENDS SOUTHWESTWARDLY INTO THE SAID VANKIRK STREET AND
NORTHEASTWARDLY INTO  COMLY   STREET (SIXTY FEET WIDE);
THENCE   EXTENDING SOUTH THIRTY-SEVEN  DEGREES FORTY-ONE
MINUTES  FIFTY-THREE SECONDS WEST ALONG THE  CENTER LINE
OF THE SAID   FIFTEEN FEET DRIVEWAY FIFTEEN FEET ELEVEN
INCHES TO A POINT;   THENCE EXTENDING NORTH FIFTY-TWO

DEGREES EIGHTEEN MINUTES SEVEN SECONDS WEST TWENTY-SEVEN
FEET THREE INCHES TO A POINT ON ANGLE; THENCE EXTENDING
NORTH FIFTY-TWO DEGREES SIX MINUTES SEVEN SECONDS WEST
PASSING THROUGH THE CENTER OF THE PARTY WALL BETWEEN THESE
PREMISES AND THE PREMISES ADJACENT TO IT ON THE SOUTHWEST
FORTY-SEVEN FEET SIX INCHES TO A POINT AN ANGLE; THENCE
EXTENDING FURTHER NORTH FIFTY-TWO DEGREES EIGHTEEN MINUTES
SEVEN SECONDS WEST THIRTY FEET THREE INCHES TO THE SAID
SOUTHEAST SIDE OF HORROCKS STREET AND THE FIRST MENTIONED
POINT AND PLACE OF BEGINNING.

BEING PREMISES: 5955 HORROCKS STREET

TOGETHER WITH THE FREE AND COMMON USE, RIGHT , LIBERTY AND
PRIVILEGE OF THE ABOVE MENTIONED DRIVEWAY, AS AND FOR A
DRIVEWAY, PASSAGEWAY AND WATERCOURSE AT ALL TIMES
HEREAFTER FOREVER IN COMMON WITH THE OTHER OWNERS,
TENANTS AND OCCUPIERS OF THE LOTS OF GROUND BOUNDING
THEREON AND ENTITLED TO THE USE THEREOF, SUBJECT , HOWEVER
TO THE PROPORTIONATE PART OF THE EXPENSE OF KEEPING SAID
DRIVEWAY IN GOOD ORDER, CONDITION AND REPAIR.

PREMISES B

AND ALSO, ALL THAT CERTAIN LOT OR PIECE OF GROUND,
SITUATE BEGINNING AT A POINT ON THE NORTHWESTWARDLY SIDE OF
SYLVESTER STREET (FIFTY FEET WIDE) AT THE DISTANCE OF FOUR
HUNDRED THIRTY-SEVEN FEET EIGHT AND ONE-HALF INCHES
NORTHEASTWARDLY FROM THE NORTHEASTWARDLY SIDE OF VANKIRK
STREET (SEVENTY FEET WIDE) IN THE 62ND WARD OF THE CITY
OF PHILADELPHIA.

CONTAINING IN FRONT OF BREADTH ON SAID SYLVESTER STREET
FIFTEEN FEET TEN AND ONE-HALF INCHES AND EXTENDING OF THAT
WIDTH IN LENGTH OR DEPTH NORTHWESTWARDLY BETWEEN PARALLEL
LINES AT RIGHT ANGLES TO THE SAID SYLVESTER STREET ONE
HUNDRED FIVE FEET TO THE CENTER LINE OF A CERTAIN FIFTEEN

FEET WIDE DRIVEWAY WHICH  EXTENDS SOUTHWESTWARDLY IN TO THE
SAID VANKIRK STREET AND   NORTHEASTWARDLY INTO COMLY STREET
(SIXTY FEET WIDE).
REAR OF 5955 HORROCKS STREET
BEING THE SAME PREMISES WHICH JOSEPH J KILIAN AND BARBARA
KING KILIAN, HIS WIFE BY DEED DATED 2/1/1994 AND RECORDED
2/9/1994 IN PHILADELPHIA COUNTY IN BOOK VCS 498 ON PAGE 443
GRANTED AND CONVEYED UNTO JOSEPH J KILIAN AND BARBARA
KILIAN, HIS WIFE
BRT NUMBER: 621355700

### Assignment Chain

| | |
|---|---|
| Assigned From: | BAYVIEW LOAN SERVICING, LLC |
| To: | Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as Trustee of ARLP Trust 2 |
| AOM Recorded: | 11/01/2016 |
| AOM Recording Details: | Book: N/A; Page: N/A; DocumentNo: 53132133 |